A. B. GILBERT *et al.* v. THE BOARD OF EDUCATION OF THE CITY OF NEWTON.—W. G. PEARSON V. SAME.

1. BOARD OF EDUCATION — *Additional Bond of Treasurer — Causes of Action — Proper Joinder.*  Where a treasurer of the board of education of a city of the second class gives an ordinary official bond upon taking the possession of his office, and afterward upon the order of the board of education gives an additional bond with substantially the same condition as the first bond, but with different sureties, and when his term of office expires he fails to deliver to his successor in office the balance of the school fund due to the school corporation, and the board of education commences an action therefor against him and his sureties on both bonds, *held*, that two causes of action are not improperly joined.

2. BOARD, *Party to Begin Action.* In such a case, as the board of education is the general representative of the school organization as a corporation, *held*, that it, and not the successor in office of the aforesaid treasurer of the board of education, is the proper party to commence the action as plaintiff.

3. ADDITIONAL BOND — *Sufficient Consideration.* In such a case, where the first bond after it was given became insufficient, and the board of education ordered that the treasurer should give another and an additional bond, which he did, *held*, that there was sufficient consideration for the giving of such additional bond.

4. TREASURER — *Two Bonds — Deficit — Sureties on Both Bonds Liable.* In such a case, where the treasurer of the board of education was also the general manager of a private corporation and had the control of its funds as well as of the school funds, and he deposited its funds and the school funds together in a certain national bank in the name of the private corporation with the knowledge and consent of the officers of the bank, such funds to be subject to his control and to his checks for schools and school-corporation purposes, as well as for the private corporation purposes; *held*, that although the treasurer, as the general manager of the private corporation, may have drawn out the funds in the bank so as to cause a deficit in the amount of the school funds deposited in the bank at the time of the execution of the second bond, still, as more than enough moneys were afterward deposited in the bank by the private corporation and its general manager to make good such deficit, such deficit was paid and satisfied, and for any other deficit in the school funds occurring subsequently to the execution of the second bond, the sureties on the second bond, as well as the sureties on the first bond, are liable.

*Error from Harvey District Court.*

THE opinion contains a sufficient statement of the case.

*Brown & Kline,* and *Bowman & Bucher,* for plaintiffs in error.

*Ady, Peters & Nicholson,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On January 30, 1889, the Board of Education of the city of Newton commenced an action in the district court of Harvey county against G. W. Holmes, an ex-treasurer of such board, and his sureties on two certain bonds, to recover $3,857.14, an alleged balance due from Holmes as

said ex-treasurer, which he had not at any time accounted for.
The defendants W. G. Pearson, who signed only the first of
the aforesaid bonds, and Fox Winnie, A. B. Gilbert, Joseph
Gerson and McKinney Smith, who signed only the second of
such bonds, and some of the other defendants, demurred to
the plaintiff's petition upon the grounds, first, that several
causes of action were improperly joined in the action; and
second, that the petition did not state facts sufficient to con-
stitute any cause of action.   The demurrers were all over-
ruled.   The record shows that Pearson then answered; that
a trial was afterward had upon such answer, and that judg-
ment was rendered against him for the amount stated in the
plaintiff's petition; but the particulars are not stated.   The
defendants Winnie, Gilbert, Gerson and Smith also answered,
setting forth in their answers, first, a general denial; second,
that the bond which they signed, the second bond, was exe-
cuted without any consideration; third, that the default of
Holmes, if any, occurred prior to the execution of the second
bond, and that all the school moneys which Holmes had at
the time of the giving of the second bond, or which were af-
terward received by him, were properly applied and accounted
for.   A trial before the court and a jury was afterward had
between the plaintiff and these four defendants, and judgment
was rendered in favor of the plaintiff and against these de-
fendants for the sum of $3,939.87, with interest and costs.
The defendant Pearson, for himself, has filed in this court a
petition in error for the purpose of reversing the order and
judgment of the district court as against him.   The defend-
ants Winnie, Gilbert, Gerson and Smith have filed another
and a separate petition in error in this court for the purpose
of reversing the order and judgment of the district court as
against them; and these two petitions in error we shall now
proceed to consider.

The facts of this case briefly stated are substantially as fol-
lows: On April 5, 1887, G. W. Holmes was elected treasurer
of the Board of Education of the city of Newton, a city of the
second class, and on April 28, 1887, he qualified by taking

3—45 KAS.

the oath of office and by giving a proper bond in the sum of $20,000, with the defendant Pearson and others as his sureties, and he at once entered upon the discharge of his duties as such treasurer. On October 3, 1888, upon the order of the board of education he gave another bond in the sum of $30,000, with the defendants Winnie, Gilbert, Gerson, Smith and one other, as his sureties. On December 17, 1888, he resigned his office as treasurer of the board of education. Afterward a successor was duly appointed and qualified, but Holmes failed and refused to pay over to his successor in office the sum of $3,857.14, the balance due to the school corporation, and he made default in that amount. During the time while he was treasurer of the board of education he was also the general manager of the Kansas Investment & Guaranty Company, and had the control of its funds; and he also acted for and had the control of funds belonging to other corporations, and also had funds of his own. During that time he deposited in the First National Bank of Newton all the funds of which he had the control, whether they were his own or belonged to the public-school fund or belonged to some one or more of the other parties for which he did business, and he deposited the same in the name of the Kansas Investment & Guaranty Company. This was all done with the knowledge and the consent of the officers of the bank.

I. It is claimed that in this action two causes of action were improperly joined, one upon the first bond, and the other upon the second bond. There is some plausibility in the argument of the plaintiffs in error attempting to sustain this claim, and yet upon the peculiar facts of this case and the authorities cited, we think the claim is not tenable. In the first place the plaintiff sets up the facts of its case and asks for relief as though the entire facts of the case could constitute only one cause of action. In the second place it alleges only one default on the part of the treasurer, Holmes, and that default occurred after the second bond was given, and indeed not until after Holmes had resigned his office; and this default is the only one for which the plaintiff has sought

to recover or has recovered in this action. Besides, the condition of the two bonds was and is substantially the same, and all the sureties on the two bonds are equally liable for any and all the defaults made after the second bond was executed, and for the only default for which the plaintiff asked to recover or did recover any judgment. And if any one of the sureties should pay more than his proper share in making this default or the judgment good, all the other sureties on both the bonds would be equally liable for contribution. Under the authority of the following cases we do not think that several causes of action were improperly joined in this action: *Holeran v. School District,* 10 Neb. 406; *Powell v. Powell,* 48 Cal. 234.

II. It is further claimed that this action is not prosecuted by the proper party as plaintiff. It is claimed that the treasurer of the board of education, the successor to Holmes, the person who is entitled to the custody of the money when obtained, should be the plaintiff in the action instead of the board of education, which, it is claimed, has no right to the custody of the money. Now the board of education of a city of the second class, as the plaintiff in this action is, is the general representative of the legal organization created in such cities for the purpose of carrying on and conducting the public schools. Section 4 of chapter 122 of the Laws of 1876 reads as follows:

"The public schools of each city organized in pursuance of this act shall be a body corporate, and shall possess the usual powers of a corporation for public purposes, by the name and style of 'The board of education of the city of ——, of the state of Kansas;' and in that name may sue or be sued, and be capable of contracting and being contracted with, of holding and conveying such real and personal estate as it may come into possession of, by will or otherwise, or as is authorized to be purchased by the provisions of this act." (Gen. Stat. of 1889, ¶ 5726.)

The board of education is the representative of the corporation, the real party in interest, and the treasurer of the board is not. (See also Gen. Stat. of 1889, among others,

¶¶ 5731, 5737; see also *Coffman v. Parker*, 11 Kas. 9.) A school corporation in a city is a school district.

III. It is further claimed that there was no consideration for the second bond, and this for the reason, as is claimed, that the first bond was all that Holmes was required to give, and that the board of education had no power to require him to give any other, further, or additional bond. We think this claim is erroneous. In the first place, the bond originally given, while it may have been sufficient at the time it was given, was clearly insufficient when the second bond was given. The first bond was only for $20,000, while at the time the second bond was given Holmes had over $40,000 belonging to the school corporation in his possession or under his control; and when the first bond became inadequate, as it did, we think the board of education, as the representative of the school corporation, had ample authority to require, as it did, that Holmes should give another and an additional bond as he did. See the sections of the statutes above cited, and others.

IV. The next thing to be considered in this case has relation to the question whether the default for which the plaintiff recovered in this action occurred, as a fact, prior or subsequently to the execution of the second bond. If it occurred prior thereto, the judgment in this case is evidently erroneous; but if it occurred subsequently, then the judgment is right. It is admitted by the parties that Holmes in fact had $4,467.47 less of school moneys in his hands and in the bank at the time of the execution of the second bond than he ought to have had; but it is claimed by the plaintiff, and we suppose it is a fact, that more than that amount of money other than school money was afterward deposited in the bank by Holmes and the investment and guaranty company, in the name of the company, in the same manner as the other deposits were made; and that such amount then became, like all the other moneys deposited in the bank by Holmes, subject to the order of Holmes for school purposes, and therefore that any deficit which may have existed at any time after that time

would be considered as occurring under the second bond as well as under the first, and the sureties on the second bond would be liable for such deficit as well as the sureties on the first bond. It appears that in all cases when Holmes received school funds, he at once deposited them in the exact form in which he received them in the First National Bank of Newton, in the name of the Kansas Investment & Guaranty Company; but they were at all times afterward, while they remained in the bank, subject to his checks for schools and school-corporation purposes. Hence as the moneys were absolutely under his control, as the treasurer of the board of education, and subject to his checks for schools and school-corporation purposes, they must be considered as school moneys; and as they were actually deposited in the First National Bank of Newton, that bank must be considered as a custodian or depositary of the funds for the school corporation. Also, as they were deposited in the name of the Kansas Investment & Guaranty Company with the knowledge and consent of its general manager, Holmes, and with the knowledge and consent of the banking officers, the Kansas Investment & Guaranty Company must also be considered as a custodian or depositary of the funds for the school corporation. It was a kind of double or joint custody of such funds by the bank and the investment and guaranty company, and both were liable for such funds, for their safe-keeping, and for their return or payment whenever called for by Holmes, as treasurer of the board of education, or by his successor in office, or by any other person or board legally representing the school corporation and having the legal authority to call for the same. Holmes and the investment and guaranty company were certainly at all times liable for this money, and therefore whenever there was any deficit in the school fund caused by Holmes or the investment and guaranty company drawing the same out of the bank in the name of the investment and guaranty company, any deposit which might be subsequently made by Holmes or by the investment and guaranty company would at once inure to the ben-

efit. of the school fund, so far at least as to make good any deficit in, or any balance due such school fund, and would apply instantly in liquidation and satisfaction of such deficit or balance.  Therefore, as there was more than enough money deposited in the bank by Holmes and the investment and guaranty company after the execution of the second bond to make up the deficit which existed at the time of the execution of such second bond, we think the sureties on the second bond were liable for any deficit or default which may have occurred or existed at any time subsequent to the execution of such second bond.  In all cases where accounts exist between parties, including bank accounts, a cause of action does not exist with reference to each item of the account, but only as to the balance that may be due to one or the other of the parties; and it exists in favor only of that party in whose favor the balance is due.  (*Waffle v. Short*, 25 Kas. 503; *Tootle v. Wells*, 39 id. 452.)  And each new item added to the account in favor of the person against whom the balance is due, operates as payment or partial payment of such balance; and it will generally operate in payment or partial payment of the oldest item of the account not yet paid or satisfied.  (*Shellabarger v. Binns*, 18 Kas. 345;  1 Morse, Banks, § 355.) Hence, as more than one deficit occurred in the school fund and in the account between the school corporation and Holmes and the investment and guaranty company and the bank, one of such deficits existing before the execution of the second bond, and the other occurring subsequently thereto, the deposits made in the bank by Holmes and the investment and guaranty company after the occurrence of the first deficit would certainly operate as a payment and satisfaction of that deficit, even if it were made subsequently to the second deficit.

Other questions have been presented by counsel, but we do not think that they require any comment.

The orders and judgments of the court below in both the cases which we have been considering will be affirmed.

All the Justices concurring.